**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY WAYNE WILLIAMS,<br><br>            Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Case No. 1:21-cv-01000-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 14, 16) |

**I.**

**INTRODUCTION**

Terry Wayne Williams ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying their application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1] Plaintiff submits that the ALJ erred in failing to properly assess Plaintiff's subjective pain complaints. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

/ / /

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 5, 6, 8, 15.)

1

## II.

## BACKGROUND

### A. Procedural History

On March 15, 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a period of disability beginning on June 1, 2018. (AR 15, 172-175.) Plaintiff's application was initially denied on April 5, 2019, and denied upon reconsideration on July 16, 2019. (AR 104-108, 112-117.) On August 27, 2019, Plaintiff requested a hearing, and on July 23, 2020, testified at a hearing before Administrative Law Judge Dennis Raterink (the "ALJ"). (AR 28-80, 118-119.) On October 7, 2020, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 12-27.) On April 30, 2021, the Appeals Council denied Plaintiff's request for review. (AR 1-6.)

On June 24, 2021, Plaintiff filed this action for judicial review. (ECF No. 1.) On November 19, 2021, Defendant filed the administrative record ("AR") in this action. (ECF No. 7-1.) On March 21, 2022, Plaintiff filed an opening brief. (Pl.'s Opening Br. ("Br."), ECF No. 14.) On April 19, 2022, Defendant filed an opposition brief. (Def.'s Opp'n ("Opp'n"), ECF No. 16.) Plaintiff did not file any reply brief.

### B. The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, October 7, 2020:

- Claimant meets the insured status requirements of the Social Security Act through December 31, 2020.
- Claimant has not engaged in substantial gainful activity since June 1, 2018, the alleged onset date.
- Claimant has the following severe impairments: degenerative disc disease of the cervical spine; degenerative joint disease of bilateral feet; epicondylitis of the left elbow; asthma; and obesity.
- Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,

2

Subpart P, Appendix 1.

- Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except requires a sit/stand option (stand for up to 10 minutes, sit for up to 30 minutes, alternating throughout the day); no overhead reaching or reaching in all directions with the left upper extremity; occasionally handle and finger with the left upper extremity; no climbing ladders, ropes, or scaffolds; occasionally crawl and climb ramps or stairs; no work at unprotected heights or with moving mechanical parts; and occasional exposure to fumes, odors, dust, gases, or poor ventilation.
- Claimant is unable to perform any past relevant work.
- Claimant was born on January 16, 1975, and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
- Claimant has at least a high school education.
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
- Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
- The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2018, through the date of decision [October 13, 2020].

(AR 15-24.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step

3

sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq.  The regulations are generally the same for both types of benefits.

1  Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

2  "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff only brings one specific challenge, that the ALJ failed to properly assess Plaintiff's subjective pain complaints.

**A.    The Clear and Convincing Standard for Weighing Credibility**

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of her symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must make findings that support this

5

1   conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude
2   the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit
3   the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

4         Factors that may be considered in assessing a claimant's subjective pain and symptom
5   testimony include the claimant's daily activities; the location, duration, intensity and frequency
6   of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage,
7   effectiveness or side effects of any medication; other measures or treatment used for relief;
8   functional restrictions; and other relevant factors.  Lingenfelter, 504 F.3d at 1040; Thomas, 278
9   F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary
10  techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent
11  statements concerning the symptoms, and other testimony by the claimant that appears less than
12  candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a
13  prescribed course of treatment."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)
14  (quoting Smolen, 80 F.3d at 1284).

15       **B.**     **The Court finds the ALJ Failed to Provide Clear and Convincing Reasons for Discounting Plaintiff's Subjective Testimony**
16

17       1.     <u>Preliminary Considerations</u>

18        While Defendant maintains the clear and convincing standard is inconsistent with other
19  law, Defendant acknowledges the standard is applicable in the Ninth Circuit.  (Opp'n 5-6 n.4.)
20  On the other hand, Plaintiff emphasizes that the use of the term "credibility" is ultimately
21  incorrect, as Plaintiff submits the word "credibility" does not appear in the current regulations.
22  (Br. 12 n. 1.)  Instead, Plaintiff states the analysis should exclusively consider whether the
23  claimant's self-described limitations are consistent with the evidence.  (Id.)  The Court does not
24  find the use of the term "credibility" changes the standards as clarified repeatedly by the Ninth
25  Circuit for the clear and convincing standard for weighing claimant's testimony of subjective
26  symptoms and limitations.  See Steele v. Berryhill, No. 3:16-CV-01736-JE, 2018 WL 468280, at
27  *6-7 (D. Or. Jan. 18, 2018) ("Under SSR 16–3p the term 'credibility' was eliminated from the
28  Agency's sub-regulatory policy and ALJs were no longer tasked with making an overarching

credibility determination . . . [t]he relevant factors an ALJ must consider are essentially the same under either ruling . . . [b]ased on the guidance set forth in the republished version of SSR 16–3p, this Court will not find automatic error in cases decided on or before March 28, 2016, solely because an ALJ's assessment of subjective symptom statements speaks in terms of 'credibility[,] . . . [h]owever, findings that are premised exclusively on a claimant's apparent character for truthfulness, rather than the listed factors, may constitute error [and] has long been the rule, if substantial evidence supports the ALJ's determination, it may be upheld even if some of the reasons cited by the ALJ are erroneous.").

Plaintiff submits there is no reasonable dispute that Plaintiff's self-described limitations are disabling, or at least described greater limitations than the RFC, thus an error in the analysis would be harmful. (Br. 14.) Plaintiff also argues it is indisputable the objective medical evidence establishes severe impairments that could reasonably result in symptoms and limitations as described. This is in line with the ALJ proceeding into the second step of the credibility analysis. (AR 20.) Defendant does not contend any error would be harmless. Thus, the Court proceeds into Plaintiff's more pointed arguments.

Plaintiff argues the ALJ failed to adequately explain his findings in a way that permits meaningful judicial review, and that at the second step, the ALJ *must* consider, in addition to the objective medical evidence, "other evidence," including: (1) the claimant's daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) type, dosage, and effectiveness of medications or other treatments; (4) treatment other than medication that has been attempted; (5) "self- treatments"; and (6) "other factors." See 20 C.F.R. §§ 404.1529(c)(3).

Plaintiff is correct that under the regulations, the ALJ is to consider the listed factors. See See 20 C.F.R. §§ 404.1529(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include . . . [listing factors]."); Rock v. Astrue, No. 07-CV-00065-TAG, 2009 WL 790012, at *13 (E.D. Cal. Mar. 23, 2009) ("Here, in evaluating the credibility of Rock's symptom testimony, the ALJ did not consider most, if not all, of the factors set forth in 20 C.F.R. § 404.1529(c)(3)."); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) ("Although SSR 88– 13 required the ALJ to consider this evidence in determining whether to accept Smolen's

subjective symptom testimony, he failed to discuss much of it.").

However, the Court disagrees that the ALJ is required to expressly consider and develop a written record concerning consideration of every factor in every case, as Plaintiff suggests. Instead, the opinion must reflect specificity and connections demonstrating proper consideration, and resulting in a written record that allows a Court to conduct a meaningful review to determine whether the ALJ's reasons proffered for discounting the testimony satisfy the clear and convincing standard. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) ("The ALJ must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints.") (citations and quotation marks omitted); Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (quoting SSR 06–03p) ("there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision"); Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) ("The ALJ may consider at least the following factors when weighing the claimant's credibility."); Rollins, 261 F.3d at 856–57 ("If the ALJ finds the claimant's pain testimony not to be credible, the ALJ must specifically make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit [the] claimant's testimony.") (internal citations and quotation marks omitted); Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("However, in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence.") (internal quotation marks and citation omitted).

Indeed, the ALJ recognized the general duty to consider these types of evidence, stating he "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities[,] [and] [f]or this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (AR 19-20.)

Nonetheless, while the Court finds Plaintiff's overarching general argument that the ALJ failed to consider each factor sufficiently to be unavailing, in turning to the ALJ's opinion in relation to the Plaintiff's specific arguments, the record, and the Defendant's briefing, the Court finds error in the ALJ's analysis and finds the ALJ failed to provide clear and convincing reasons to discount Plaintiff's testimony, for the reasons explained below.

> 2. <u>The Court finds the ALJ has Erred and Defendant has not Sufficiently Addressed the Error to Satisfy the Court that the ALJ provided Clear and Convincing Reasons for Discounting the Plaintiff's Testimony</u>

The ALJ first summarized aspects of the symptom testimony as follows:

> The claimant testified to pain and a burning sensation both feet. Despite having surgery on both feet in 2018, he reported his pain returned and he has difficulty standing and walking. He stated he uses a cane for walking. However, the claimant admitted he was not prescribed such a device. Nonetheless, he further commented he elevates his feet to waist level or higher because of his symptoms. The claimant testified he lies down for about one hour four to five times daily.
>
> As for the neck pain and left arm problems, he testified he has experienced these issues for about five years. He experiences problems in the neck that radiate down to the left shoulder and left arm. This causes numbness, weakness, and loss of dexterity in the left arm. The claimant also commented that his pain was distracting and affected his concentration (Hearing Testimony).
>
> Functionally, the claimant testified he could only stand or walk for five to 10 minutes at one time. His ability to lift was limited to 10 pounds, but he stated he could not do so consistently. Although he admittedly could climb stairs, he had pain when doing so (Hearing Testimony).

(AR 20.)   As to the Plaintiff's testimony, the ALJ determined that while the medical determinable impairments could reasonably be expected to cause the alleged symptoms, the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 20.) The parties first discuss the ALJ's reliance on objective medical findings.

     **a.**    **Reliance on Objective Medical Records**

The ALJ cannot discredit Plaintiff's pain testimony solely because it is found not to be supported by the objective medical evidence. <u>Rollins</u>, 261 F.3d at 857 ("While subjective pain

testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citing 20 C.F.R. § 404.1529(c)(2)); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); Burch, 400 F.3d at 680-81 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

First, Plaintiff argues the ALJ relied on a highly selective recitation of the medical record, and understated the objective findings. Specifically, the ALJ noted there were radiographs revealing moderate multi-level degenerative changes in the cervical spine, when the MRI findings actually revealed severe findings. Plaintiff asserts the ALJ failed to acknowledge the severity of these findings, choosing only to identify the moderate findings.

Critical for the Court, Defendant appears to gloss over Plaintiff's primary and first argument concerning the ALJ's reliance on the objective medical evidence, the MRI results. In opposition, Defendant indeed cites these MRI results as support for the ALJ's findings concerning the objective medical evidence, but Defendant only states "[m]edical imaging of Plaintiff's neck found at most moderate findings that did not support his subjective complaints." (Opp'n 7.) It does not appear Defendant has addressed the argument, and the proffer that the imaging found at most moderate findings is an incorrect submission to the Court on this issue. The Court's beginning a review on such proffer does not lend itself to an easy road to find clear and convincing reasons. See Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002) ("The clear and convincing standard is the most demanding required in Social Security cases.").

On November 18, 2019, Plaintiff had an x-ray of the cervical spine completed, finding moderate disc narrowing at C4-C5, C5-C6, C6-C7, and an impression of moderate degenerative disc disease. (AR 424.) Thereafter, an MRI of the cervical spine was completed on March 30, 2020. (AR 451-52.) The overall findings include a range from mild to severe, with references to

severe, moderately-severe, and moderate-advanced findings and impressions, including the following notations:

> C4/5: Broad posterior disk bulge effaces the ventral thecal sac causing moderate spinal canal stenosis. Uncovertebral facet hypertrophy contributes to moderately severe bilateral neural foraminal narrowing.
>
> C5/6: Broad posterior lateral disk bulge effaces the ventral thecal sac causing at least moderate spinal canal stenosis. Uncovertebral facet hypertrophy results in severe left foraminal stenosis. The right neural foramen is patent.
>
> C6/7: Broad posterior disk bulge causes effaces the ventral thecal sac and severe spinal canal stenosis. The central spinal canal measures approximately 6 mm anteroposteriorly. Bulging disk and uncovertebral facet hypertrophy encroach into the left neural foramen which is severely narrowed. There is moderate -severe right foraminal narrowing.

(AR 451.) The following impression was issued based on the MRI:

> 1. Moderate-advanced degenerative disk disease and uncovertebral facet hypertrophy is present in the mid cervical spine from C3-C7, most prominent at C6/7 with severe spinal canal and neural foraminal stenosis. There is at least moderate central canal and foraminal stenosis at C4/5 and C5/6, as described.
>
> 2. Diffuse narrowing of intervertebral disk space. No discrete spinal cord lesions. Loss of normal cervical lordosis. All findings appear chronic.

(AR 452.) As for the neck pain and MRI results, the ALJ stated the following:

> As for the neck pain, the claimant first complained of neck pain in October 2019. He stated the pain radiated down to his left upper extremity. Interestingly, his physical examination was completely normal despite his complaints (Ex 6F/8-9). Regardless, radiographs from late 2019 and again in early 2020 revealed moderate multi-level degenerative changes in the cervical spine (Ex 5F/17 and 6F/27-28). By mid-2020, examination identified tenderness to palpation and complaints of some pain with range of motion testing of the cervical spine (Ex 7F/13).

(AR 21.) It is true that the MRI did reveal moderate multi-level degenerative changes, however, the ALJ did not reference the fact that these objective MRI results also contained multiple references to severe, moderate-severe, and moderate-advanced findings.

/ / /

/ / /

Further, Plaintiff takes issue with the ALJ's next description of records relating to the neck pain. The ALJ stated:

> The most recent treatment note is from August 2020, and this provides only limited support to the claimant's allegations. He endorsed numbness and tingling in the left hand, but he denied any difficulty with fine motor tasks with either upper extremity. The only notable finding on examination was somewhat decreased sensation in the C6 and C7 distributions in the left arm (Ex 8F).

(AR 21.) Plaintiff emphasizes this summary overlooks that this was a neurosurgical evaluation and not just a treatment note, and ignored the recommendation that surgical decompression was suggested, and that the record references the severe MRI findings.

The August 31, 2020 record, does indeed further reference the moderate to severe MRI results. (AR 515.) The doctor noted: Plaintiff had "cervical DDD/DJD and multilevel canal and NF stenosis that clinically has C5-7 radiculopathy[;] the patient has no clinical e/o myelopathy [and] [a]t this point I feel that surgical decompression is an option and I discussed this . . . [Plaintiff] has asthma and was previously hospitalized and almost intubated for influenza and is not interested in surgical treatment at this time secondary to risk of Covid exposure in the hospital [and] [g]iven that his symptoms are solely from a radiculopathy I fell that is also reasonable to proceed with PT on a virtual platform and f/u in 3 months." (AR 515-516.)

While Plaintiff denied difficulty with fine motor tasks, he did complain of numbness/tingling in the back of the left arm and left hand; described radiating shock-like pains into the triceps area that doesn't reach below the elbow, and complained of left arm weakness. (AR 515.) The record does restate the imaging results reflecting moderate to severe imaging at C6/7, which is relevant to the findings the ALJ did find notable in his summary. In conjunction with the imaging that was not accurately restated on the record, which related to this neurosurgical record that restates the findings and suggests surgery, the Court finds this collectively weakens the ALJ's use of the objective medical evidence as a reason for discounting Plaintiff's testimony.

Accordingly, the Court does not find the ALJ's reliance on the objective evidence to be supported by substantial evidence in the record, and thus does not add to a finding of sufficient

1 clear and convincing reasons for discounting Plaintiff's symptom testimony. See Rollins, 261
2 F.3d at 857 (lack of objective evidence not enough standing alone); Vertigan, 260 F.3d at 1049;
3 Moore, 278 F.3d at 924 (clear and convincing highest standard).

      **b.**    **Limited Treatment and Inconsistent Statement Regarding Foot Pain**

Defendant argues the ALJ noted limited treatment for Plaintiff's feet during a large portion of the relevant period (AR 20), a factor consistent with the regulations. Relatedly, Defendant proffers the ALJ appropriately discounted the allegations based on inconsistency, as despite allegations of severe bilateral pain, Plaintiff admitted no pain in the left foot. (AR 354.) Specifically, the ALJ found:

> The primary reason the claimant filed for disability is pain in his feet. Turning to the record, he underwent a left hallex total joint arthroplasty in June 2018 (Ex 1F/35). Only a few months later, in August 2018, he had a right hallex joint replacement (Ex 1F/16). He recovered normally thereafter except for some increased pain on the right side in September 2018, at which time an MRI showed some bone marrow edema. Yet the reminder of the findings were entirely normal (Ex 2F/59). Of particular note, contrary to his testimony of severe, chronic bilateral foot pain despite his surgeries, evidence from early 2019 contained his admission that he experienced no pain in the left foot (Ex 2F/46).
>
> He then had limited treatment for his feet throughout most of 2019. There is a note from May 2019, at which time he reported pain in both feet while walking. However, there were no specific positive musculoskeletal findings related to either foot (Ex 3F).
>
> It was not until well into 2020 that any substantive complaints of foot issues again appeared in the record. Treatment notes from mid-2020 indicated the foot pain was intermittent and fluctuating (Ex 7F/17). Nonetheless, he had some tenderness to palpation and complaints of pain with range of motion testing of the feet (Ex 7F/13 and 19-20). Such findings support an overall reduction in functional capacity as provided in the residual functional capacity. However, the limited and generally inconsistent nature of the findings throughout the period at issue do not demonstrate he was any more limited than already accommodated within the given residual functional capacity.

(AR 20.)

Even if the Court accepts this finding as supported by substantial evidence, a lack of objective medical evidence cannot form the sole basis for discounting pain testimony under the clear and convincing standard. Given the issues concerning the analysis of the MRI objective

13

imaging results as to the neck, and the totality of the records concerning the feet and totality of testimony concerning such, the Court cannot find the observations concerning 2019 to be clear and convincing. The observation is, or borders, on being interconnected with a lack of objective medical evidence. If not, the Court does not find it to be clear and convincing demonstration of limited or conservative treatment. See Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability."), as amended (Apr. 9, 1996).

Plaintiff had a left foot hallux total arthroplasty performed on June 7, 2018, and a right foot hallux total replacement on August 23, 2018. (AR 264-65, 270-71, 273, 289-90.) On January 24, 2019, Plaintiff presented for a follow-up to a surgery bilateral hallux rigidus. The record notes no pain on the left foot: "He is status post both total toe implants. He has continued pain to the right toe. No pain to the left. MRI was normal except showing bone marrow edema. Patient has done physical therapy which caused him far more pain than helped. He has still not stopped smoking. Patient is now seeking permanently disability." (AR 354.) The record also states: "Discussed with patient that he should use rigid inserts and the only other option at this point would be to put in a new implant or fusion and patient understands. He will seek permanently disability which I agree. He qualified for permanent disability even before the surgery." (AR 355.)

Plaintiff does not appear to dispute improvement on the left sometime after surgery, stating in the opening brief that "[h]is right foot pain was the same as before surgery while his left foot was fine." (Br. 4.) A November 29, 2018 record notes the right MRI showing bone marrow edema, and noting "left is fine." (AR 348.) At the hearing, Plaintiff testified as follows:

> My left foot, that's the one that's gotten worse now . . . [the non-prescribed cane] reduces the amount of pain, because I don't have to put so much pressure on that foot. Because actually, now, they – they're telling me my left foot – I had just seen the doctor for some of the records that haven't came in, and he says that it's a possibility that that joint was put in a little crooked, because now my foot sits flat. So that puts all the weight on all my other toes and joints, and making them get arthritis, and like they're getting sore and swollen, and it's causing another complication there.

(AR 52-53.)

14

Without identification of the specific testimony that is undermined, aside from generally referring to testimony of bilateral pain, it is not sufficiently clear and convincing for the Court to meaningfully review whether the fact the left foot was better for a period after surgery, was inconsistent with Plaintiff's testimony. It is apparent on the record that Plaintiff did have conditions effecting both feet given he had surgery on both feet. The Court does not find isolated focus on a post operative visit that specified he was not having issues with one foot and was having issues with another foot, is a clear and convincing reason to discount Plaintiff's pain testimony concerning his feet issues overall.

Indeed, Plaintiff testified that the left foot was the one that was getting worse at the time of the hearing. This testimony is supported by the record, a record that the Court recognizes the ALJ did acknowledge as present in 2020. (AR 20.) Specifically, on July 14, 2020, Plaintiff presented with left foot pain, described as constant and at a severity level of 8, with an onset date of two months prior. (AR 504.) The ALJ acknowledged that on that date "he had some tenderness to palpation and complaints of pain with range of motion testing of the feet." (AR 20.) The musculoskeletal exam from that date notes moderate pain with motion on both feet. (AR 506.) While it may have been self-serving or suspicious for such records to appear shortly before the hearing, the ALJ did not elicit any testimony concerning certain time periods and when Plaintiff did or did not have pain in one foot or the other, nor more generally addressed to the ALJ's concern about a lack of treatment records in 2019. See Samers v. Comm'r of Soc. Sec., 357 F. Supp. 3d 1005, 1008 (N.D. Cal. 2019) ("The ALJ did not ask Samers about the apparent gaps in treatment at the hearing but concluded that the gaps were inconsistent with 'disabling levels of symptoms.' "); Orn, 495 F.3d at 638 ("We have held that an 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies.") (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)); Lester, 81 F.3d at 833 ("Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability."); Diedrich v. Berryhill, 874 F.3d 634 (9th Cir. 2017) (an ALJ may not rely on "cherry pick[ed]" evidence to support a denial of benefits).

An " 'adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment' including inability to pay, whether '[t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely,' and whether medication may relieve symptoms." Orn, 495 F.3d at 638 (quoting S.S.R. 96–7p at 7–8). Additionally, there is not a finding that Plaintiff failed to follow a *prescribed* course of treatment, the language used in the underlying regulation. See 20 C.F.R. § 404.1530 ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work . . . [t]he following are examples of a good reason for not following treatment.").

Accordingly, the Court does not find limited treatment and inconsistent statements regarding foot pain to be clear and convincing reasons for discounting Plaintiff's testimony based on the record and caselaw discussed above.

### c.   Support from Medical Opinions in the Record

Last, Defendant argues the ALJ properly found the Plaintiff could perform a reduced range of light work, as supported by the opinion of Dr. Bullard. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) ("In addition, the medical evidence, including Dr. Eather's report and Dr. Neville's report—which both found Stubbs–Danielson could perform a limited range of work—support the ALJ's credibility determination."). It is not clear in the authorities cited by Defendant whether this would be enough standing alone to satisfy the clear and convincing standard. See Streeter v. Berryhill, No. 1:17-CV-01450-JDP, 2019 WL 1060041, at *5 (E.D. Cal. Mar. 6, 2019) ("the extensive medical evidence summarized above provides clear and convincing reasons supported by substantial evidence for the ALJ's credibility determination . . . [and the ALJ] further considered and gave weight to the medical opinions") (citing Carmickle, 533 F.3d at 1161), aff'd sub nom. Streeter v. Saul, 835 F. App'x 305 (9th Cir. 2021). In either regard, here, the Court does not find this to be a clear and convincing reason.

First, as Defendant admits in briefing, "[i]t appears that the ALJ's decision mistakenly referenced Dr. Pham, instead of Dr. Bullard . . . Dr. Bullard determined that Plaintiff could perform light work and Dr. Pham concluded that Plaintiff could perform medium work, but the ALJ mistakenly referenced Dr. Pham as concluding that Plaintiff could perform light work." (Opp'n 8 n.6.)  More significantly, the ALJ stated he could not defer or give any specific evidentiary weight, and only found the light assessment (Bullard's but referred to as Pham by the ALJ) "somewhat persuasive," as "treatment notes submitted into the record after the date of this opinion demonstrate the need for left upper extremity limitations and postural limitations beyond those offered by Dr. Pham."  (AR 21-22.)  As for the medium assessment (referred to as Bullard's), the ALJ stated the opinion was not persuasive, because treatment notes after the date of the opinion contained discussion of surgical decompression of the cervical spine, and radiographs showed degenerative changes of the cervical spine.  (AR 22.)

While this may be a reasonable weighing of the state agency medical opinions, the Court does not find the opinions and the ALJ's reliance on them to provide a clear and convincing reason for discounting Plaintiff's testimony here.

## V.

## CONCLUSION AND ORDER

Based on all of the foregoing reasons, the Court finds that the ALJ did not provide clear and convincing reasons for discounting Plaintiff's symptom testimony.  See Moore, 278 F.3d at 924 ("The clear and convincing standard is the most demanding required in Social Security cases."); Moon v. Colvin, 139 F. Supp. 3d 1211, 1221 (D. Or. 2015) ("On the record before me, however, I cannot confidently conclude that the ALJ provided clear and convincing reasons to support his decision to assign little weight to Plaintiff's subjective symptom testimony.").

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order.  It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Terry Wayne Williams and against Defendant Commissioner of Social Security.  The Clerk of the Court is directed to

CLOSE this action.

IT IS SO ORDERED.

Dated: **August 1, 2022**

UNITED STATES MAGISTRATE JUDGE